## Richmond

MERLE S. BERRIEN V. GREENE COUNTY DEPARTMENT OF PUBLIC
WELFARE, ET AL.

September 5, 1975.

Record No. 740917.

Present, All the Justices.

*Carroll Kem Shackelford*, for plaintiff in error.

*John R. Bushey, Jr.* (*L. B. Chandler, Jr.*, on brief), for defendants
in error.

COCHRAN, J., delivered the opinion of the court.

In this appeal we are concerned with the custody of an infant
daughter, born out of wedlock on September 21, 1967, to Merle S.
Berrien and John D. Hess.

This litigation was initiated on March 4, 1971, when Hess filed
a petition in the Juvenile and Domestic Relations Court of Greene
County (the juvenile court) seeking custody of the child and alleging
that Berrien, the mother, was neglecting and abusing her. By order
entered by the juvenile court on April 8, 1971, custody was awarded
to the mother "on a probationary period of indeterminate length, to
make certain that said natural mother is providing a suitable and
adequate home for said child." On January 25, 1973, the juvenile
court ordered that the infant undergo psychiatric examination to

determine the effect of the custody arrangement. In July, 1973, temporary custody was awarded to the Department of Public Welfare of Greene County (the Department), and by orders entered August 23, 1973, and February 25, 1974, the juvenile court awarded permanent custody to the Department, authorized the Department to place the child for adoption, and terminated the parental rights of Berrien and Hess. The child is now living with foster parents, who, though fond of her, are not willing to adopt her.

On appeal by each of the natural parents the trial court heard evidence and by final order entered May 20, 1974, *nunc pro tunc* as of April 8, 1974, in which the court found that the infant's "best interest would be served" by doing so, terminated the rights of the parents, awarded custody to the Department with the right to place the child for adoption, but ordered that Berrien and Hess be notified of any adoption proceedings. Berrien has appealed this order.

The evidence shows that Berrien, age 46 at the time of the hearing in the trial court, and Hess, then 74, had lived together for some years, during which time Berrien had given birth to three children, of whom two were placed for adoption and the third is the subject of this controversy. Both Berrien and Hess love the child and, indeed, there is evidence that Hess, through an excess of affection, may have been overly indulgent of the little girl. In 1970 Berrien (then Swink) left Hess and married Berrien, by whom she now has a daughter. The Berriens moved to North Carolina in 1972 but returned to Virginia the following year. They lived for a time in Greene County and then moved their house trailer into Orange County to the Pentecostal Campground, where they resided at the time of the hearing.

In its final order the trial court made no finding of unfitness of the mother to have custody of the child, and the evidence does not justify a finding of such unfitness by implication.

Sue Dwoskin, a caseworker for the Department, testified that Berrien was reputed to drink to excess but that if drinking had been the only problem she would not have recommended removal of the child from her mother's custody. The main basis for her recommendation was the interaction of adults, *i.e.*, the animosity between Hess and Berrien. The caseworker asserted that she knew of no physical abuse of the child and that she had seen Berrien under the influence of alcohol on only one occasion.

Berrien, the next witness, testified that she had never been an alcoholic, and that she had not had a drink since July, 1973.

John Fray, a probation officer, testified that in 1971 the Berriens' home was unstable because of Mr. Berrien's unemployment and heavy drinking. Fray, who had not visited the home since December, 1971, testified that he once found Berrien intoxicated and dancing with a man not her husband.

Sheriff Harold T. Chapman, of Greene County, testified that he had not been in the Berrien trailer since early 1972; that he never saw Berrien drunk but had seen her husband drunk; and that he knew of no evidence of neglect or abuse of the child.

Dr. John Tedesco, a child psychologist, testified to his conclusions based upon a two-hour interview with the child in June, 1973. He felt that she was emotionally damaged, although not severely affected, primarily by the "tug of war" between her parents, and that a more stable family situation should be provided immediately. He recommended controlled visits by the parents.

In the record are various affidavits, the most recent dated September, 1972, purporting to show that Berrien was a heavy drinker, or that she was promiscuous, and that Hess would be a fit person to have custody of the child. There are also in the record reports from social workers covering the period from 1971 through 1973, which disclose that Berrien was a good housekeeper and that her home was "neat and clean." Although the reports also refer to Berrien's "reputedly" having a drinking problem, none indicates that either of the caseworkers had seen her intoxicated, and the most recent report reflects the caseworker's observation that Berrien had stopped drinking.

Without hearing Berrien's evidence, other than her own testimony, the trial court announced that no further evidence was necessary unless evidence was available which was strong enough to counteract his opinion that Berrien was unfit to have custody of the child.

Berrien then adduced supporting evidence from three friends and neighbors who testified that she was a good mother, that she did not drink to excess, and that she maintained a neat and clean home. Berrien's attorney represented to the court that similar testimony could be given by her husband, by her married daughter, and by the pastor of the Pentecostal Church who lived in a trailer next to the Berriens.

Hess, the last witness, testified that Berrien had stopped drinking for about ten years some time ago but had started again. He said, however, that he believed she had stopped again; that she looked better; and that he had not recently heard of her drinking.

We have recently reaffirmed the principles to be followed in custody and adoption cases between a parent and a non-parent. The parent prevails "unless the non-parent bears the burden of proving, by clear and convincing evidence, both that the parent is unfit and that the best interest of the child will be promoted by granting custody to the non-parent." *Rocka* v. *Roanoke Co. Dep't of Welfare*, 215 Va. 515, 518, 211 S.E.2d 76, 78 (1975).

The trial court, after hearing all the evidence, made a finding that the best interest of the child would be served by awarding her custody, with adoption rights, to the Department. We cannot say that this finding is without credible evidence to support it. Except for the announcement made before hearing all the evidence, however, there is no finding by the trial court that Berrien is unfit. Moreover, there is no proof by clear and convincing evidence that at the time of the hearing in the trial court she was unfit. To the contrary, the evidence tends to show that she was then behaving herself acceptably and was maintaining a good home for her husband and their infant child.

The burden was not on Berrien to prove her fitness; the burden was on the Department to prove Berrien's unfitness before the trial court could take the ultimate, drastic, and irrevocable step of permanently terminating her parental rights. We hold that the Department failed to carry its burden.

We believe that no useful purpose would be served by remanding this case for another evidentiary hearing. This child has been the pawn of contending forces for more than half her life. At some future time her custody, of course, may become the subject of further litigation. But we will bring the pending litigation to a conclusion. Accordingly, we reverse the final order of the trial court and order that custody of this child be restored to her natural mother.

*Reversed and final judgment.*