### KENNETH CHARLES WEAVER

### v.

### THE ROANOKE DEPARTMENT OF HUMAN RESOURCES, ET AL.

April 18, 1980.

Record No. 791059.

Present: All the Justices.

### DEBORAH RICHARDS WEAVER

### v.

### THE ROANOKE DEPARTMENT OF HUMAN RESOURCES, ET AL.

April 18, 1980.

Record No. 791070.

Present: All the Justices.

922

*Lamar W. Davis (Copenhaver, Ellett & Cornelison,* on brief), for appellant. (Record No. 791059).

*Jonathan M. Apgar, Assistant Commonwealth's Attorney (Michael T. Aheron,* on brief), for appellees. (Record No. 791059).

*Dennis L. Montgomery (Harris & Montgomery,* on brief), for appellant. (Record No. 791070).

*Jonathan M. Apgar, Assistant Commonwealth's Attorney (Michael T. Aheron, on brief), for appellees. (Record No. 791070).*

I'ANSON, C. J., delivered the opinion of the Court.

These two cases, consolidated for hearing before us, concern the termination of residual parental rights pursuant to Code § 16.1-283(C) (Cum. Supp. 1979). The trial court entered orders terminating the appellants' residual parental rights and awarding these rights (including the right to consent to an adoption) to the Roanoke Department of Human Resources. The appellants, Deborah Richards Weaver and Kenneth Charles Weaver brought these appeals in which the only assignments of error are that the evidence is insufficient to support the termination of their residual parental rights under the provisions of Code § 16.1-283(C).

The appellants were married on October 9, 1969. Kimberly Sue Weaver was born in March 1972, and Kenny Charles Weaver, Jr., was born in October 1973. The parents have been separated since 1974. Although both parents claimed prior to trial in the court below to be in the process of obtaining a divorce, the record does not reveal whether a divorce has been granted.

Following a brief period during which the children were placed in a foster home, the father was granted custody of both children subsequent to a court hearing held on March 5, 1975. On October 30, 1975, after obtaining the Weavers' consent, a couple petitioned to adopt Kimberly; another couple petitioned to adopt Kenny. The petition to adopt Kimberly was withdrawn on April 3, 1976; the petition to adopt Kenny was denied on June 17, 1976. On July 1, 1976, Mr. Weaver petitioned the Juvenile and Domestic Relations District Court to be relieved of custody of the two children because he was financially unable to provide for their care. On July 6, 1976, custody of both children was granted to the Roanoke Department of Human Resources for placement in foster care.

The Department developed a plan designed to transfer custody to either parent meeting the following goals: 1. "Provide adequate housing and stable living arrangements (same address at least ninety days)," 2. "Locate employment (same job at least ninety days) or show evidence of ability to provide for child," 3. "Visit child regularly," and 4. "Pay support."

Mr. Weaver visited the children eighteen times from August 1976 until March 1978. The social worker in charge of the case testified that his visitation had been sporadic but that since December 1978 his

visits had been more regular. She also testified that during these visits the children showed affection for him, that he reciprocated this affection, that there seemed to be a genuine bond between Mr. Weaver and his children, and that the children know and recognize him as their father. Kimberly's foster mother stated that although Mr. Weaver's first visitation left little impression on Kimberly, she "has gotten more attached to him lately."

During the children's foster care, Mr. Weaver changed jobs frequently or was out of work. He failed to pay support for his children during this period. He gave the Department six addresses from July 1976 until August 1978 and reported he had insufficient space for his children at any of his addresses. During mid-1978, he embarked on a career as a building subcontractor and spent as many as twelve hours a day traveling from his Roanoke home to various job sites. According to the agreed statement of facts, Mr. Weaver was only beginning to become financially independent when this case was heard by the circuit court. He testified, however, concerning his continuing affection for his children and his future plans to be reunited with them. Mr. Weaver also testified that he had purchased a home suitable for his children and that his mother was fully willing and able to provide care and supervision for the children while he worked.

From July 1976 until November 1977, Mrs. Weaver lived outside Virginia and did not maintain regular contact with the children. Upon her return to Virginia, she was arrested for passing a bad check and obtaining merchandise under false pretenses. She was convicted of both charges, sentenced to sixty days in jail, and placed on probation for thirteen months thereafter. From July 1976 until January 25, 1978, Mrs. Weaver did not contact the agency. When she did establish contact, she stated that she wished to work towards obtaining the custody of her children. From February 4, 1978, through April 9, 1979, she visited the children on twenty-two occasions, at least once a month except for August 1978, during which she did not visit.

The statement of facts indicates that "Mrs. Weaver did not work" during the time period at issue. According to the Department's records, she stated that she had worked for a few weeks but was unable to continue her work because of high blood pressure. These records also reveal that Mrs. Weaver was, at least until December 1978, financially dependent upon money received from the Department of Human Services and food-stamp benefits. She had no additional sources of subsistence. The statement of facts indicates that she paid no support for her children during their period of foster care. During 1978, she moved at least six times.

On April 16, 1979, the trial court entered orders terminating the residual parental rights of both Mr. and Mrs. Weaver and awarded these rights, including the right to consent to an adoption, to the Department. The court found that "the parents, without good cause, have been unwilling or unable within a reasonable period to remedy substantially the conditions which led to the foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health, and other rehabilitation agencies to such end. . . ." The court also found that it was in the best interests of the children that the Weavers' residual parental rights be terminated. In addition, the court concluded that "the homes of the parents are unstable and inadequate for the placement" of the children.

■ Issues concerning the termination of residual parental rights can arise in the context of an adoption proceeding or a proceeding terminating residual parental rights and granting a social agency the right to consent for adoption. Unlike the termination of parental rights accompanying an adoption proceeding,[1] the termination of parental rights apart from adoption is a rather recent statutory addition. In *Lowe v. Grasty*, 203 Va. 168, 172-73, 122 S.E.2d 867, 870 (1961), we held that, absent express statutory authority, a court cannot terminate parental rights permanently and award those rights to a governmental agency. Since no statute providing such authority existed at the time of the lower court's decision in *Lowe*, we reversed the order permanently committing the child to the Department of Public Welfare. Subsequent to the trial court's order in *Lowe*, the General Assembly amended Code § 16.1-178 to allow for the termination of parental rights "[i]f proper studies indicate that it is for the child's best interest and that of the State that such child be separated perma-

---

[1] Code § 63.1-225(C) authorizes the granting of an adoption over the objection of the parent if the court determines that the consent is withheld "contrary to the best interests of the child or is unobtainable. . . ." For earlier statutory language authorizing the adoption of infants whose parents do not consent, see Code of 1950 § 63.1-225(4) (1968 Repl. Vol.); Code of 1942 § 5333d; Code of 1887 § 2614 (Supp. 1898). We have held that unless the nonparent demonstrates that a continuation of the parent-child relationship would be detrimental to the child, the language in the present statute forbids an adoption (and, necessarily, the termination of parental rights of a nonconsenting parent through an adoption proceeding) where there is no finding that the nonconsenting parent is unfit and the parent had not lost his rights to the child by conduct or previous legal action. *Ward v. Faw*, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979); *Malpass v. Morgan*, 213 Va. 393, 399, 192 S.E.2d 794, 799 (1972). *Cf. Harry v. Fisher*, 216 Va. 530, 531-32, 221 S.E.2d 118, 119 (1976), and *Szemler v. Clements*, 214 Va. 639, 644-45, 202 S.E.2d 880, 885 (1974), which hold that where valid consent is given but subsequently revoked, the court should grant adoptions promoting the child's best interests.

nently from its parent, parents or guardian. . . ." Acts 1960, c. 331, at 393. In *Rocka* v. *Roanoke Co. Dep't of Welfare,* 215 Va. 515, 518, 211 S.E.2d 76, 78 (1975), and *Berrien* v. *Greene County,* 216 Va. 241, 244, 217 S.E.2d 854, 856 (1975), we held, however, that parental rights may not be terminated without a finding of parental unfitness. Subsequent to these decisions, the General Assembly repealed Code § 16.1-178 and substituted Code § 16.1-283 (Cum. Supp. 1979), which allows for the termination of residual parental rights on the grounds of neglect, abuse, abandonment, and voluntary relinquishment. Acts 1977, c. 559, at 863.

Whether the termination of parental rights occurs in the context of an adoption or as a separate proceeding, the termination of the legal relationship between parent and child is a grave proceeding. A court order terminating parental rights renders the parent "a legal stranger to the child" and severs "all parental rights." *Shank* v. *Dept. Social Services,* 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976). Our prior decisions clearly indicate a respect for the natural bond between children and their natural parents. The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself. While it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare. Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship.

The Department stresses the significance of the prior court orders divesting both parents of their custodial rights and responsibilities. We have, as the Department notes, repeatedly held that where a court has entered a final order divesting a parent of custodial rights, the burden is on the parent seeking custody to show that circumstances have so changed that it would be in the children's best interests to restore custody to the parent. *McEntire* v. *Redfearn,* 217 Va. 313, 315-16, 227 S.E.2d 741, 743 (1976); *Dyer* v. *Howell,* 212 Va. 453, 456, 184 S.E.2d 789, 792 (1971). *See also Harper* v. *Harper,* 217 Va. 477, 479, 229 S.E.2d 875, 876 (1976). The proceeding below, however, concerned the termination of residual parental rights as well as custody of the children.[2] A final order terminating parental custodial rights does not sever residual parental rights. In connection

---

[2] Both parents petitioned below for a return of custody. The court impliedly denied their petitions by terminating their residual parental rights, as requested by the Department. Neither parent has assigned as error the trial court's denial of their petitions for custody.

with the parents' petitions for custody, the parents had the burden of showing changed circumstances justifying a change in custody. In connection with the Department's petition for termination of residual parental rights, however, the court order divesting them of custodial rights did not place upon the parents the burden of demonstrating that their residual parental rights should not be terminated.

In the case at bar, the circuit court relied upon Code § 16.1-283(C)[3] as the statutory basis for, the termination of the Weavers' residual parental rights. Specifically, the court apparently relied upon Code § 16.1-283(C)(2), which authorizes the termination of residual parental rights if the court finds that such termination is in the best interests of the child and that the "parent or parents, without good cause, have been unwilling or unable within a reasonable period to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies

---

[3] Code § 16.1-283(C) provides:

C. The residual parental rights of a parent or parents of a child found by the court to be neglected or abused or placed in foster care as a result of an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The parent or parents have, without good cause, failed to maintain contact with and to provide or substantially plan for the future of the child for a period of twelve months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship; or

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Proof of any of the following shall constitute prima facie evidence of the conditions set forth in subparagraphs C 1 or 2 hereof:

a. The parent or parents have failed, without good cause, to communicate on a continuing or planned basis with the child for a period of twelve months; or

b. The parent or parents, without good cause, have failed or have been unable to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a social, medical, mental health or other rehabilitative agency.

to such end."[4] The appellants argue on appeal that the termination of their residual parental rights was not supported by sufficient evidence.[5]

After examining the evidence in the record, we conclude that the evidence was insufficient to justify the termination of Mr. Weaver's residual parental rights under the provisions of Code § 16.1-283(C)(2). The record discloses that Mr. Weaver's voluntary entrustment agreement with the Department arose because of his financial inability to care for his children. In addition, the record supports the court's determination that Mr. Weaver has been "unable within a reasonable period to remedy substantially the conditions which led to the [children's] foster care placement."[6] The record also reveals that Department officials met with Mr. Weaver, assisted him in setting goals for himself, and showed commendable flexibility in arranging visitation. Nothing in the record, however, indicates what measures, if any, were taken by rehabilitative agencies to provide him with assistance in remedying his financial inability to provide for his children, which was the reason for foster care placement. In the

[4] The petitions for termination of residual parental rights were based upon Code § 16.1-283(C)(1), which allows termination where a court finds that a parent has failed to maintain contact with and substantially plan for the future of a child for twelve months. The trial court's orders contained no such finding. Consequently, termination of the Weavers' residual parental rights could not have been based upon Code § 16.1-283(C)(1). The finding of the court mirrors the finding required for termination pursuant to Code § 16.1-283(C)(2), and we conclude that the Weavers' parental rights were terminated under that provision, Neither the attorney for the father nor the attorney for the mother has argued that the discrepancy between the petition and the order constitutes reversible error. Because the appellants have not raised this issue in their petitions for appeal, Rule 5:21 bars consideration of the issue.

[5] In oral argument, Mr. Weaver's attorney noted that the circuit court's order did not contain a finding of parental unfitness, as required by *Rocka* v. *Roanoke Co. Dep't of Welfare,* 215 Va. 515, 211 S.E.2d 76 (1975). In reply, the attorney for the Roanoke Department of Human Services noted that the statute authorizing termination of residual parental rights has been changed since *Rocka* was decided. Like the present statute, the statute effective when *Rocka* was decided did not explicitly require a showing of parental unfitness. Because, however, this point was not raised by an assignment of error in either petition for appeal, we do not decide whether the change in statutory language removes the requirement set forth in *Rocka*.

[6] It is not clear to us, however, that his failure to remedy his financial condition is "without good cause," a finding required by the statute. The evidence submitted indicates that he has made considerable effort to remedy his financial condition. Because of our holding, however, it is unnecessary to decide whether this statute allows for the termination of the residual parental rights of a natural parent who, despite sincere and conscientious efforts to remedy his financial inability to provide for his child, is nevertheless unable to do so.

absence of evidence indicating that "reasonable and appropriate efforts" were taken by social agencies to remedy the conditions leading to foster care, residual parental rights cannot be terminated under Code § 16.1-283(C)(2). Although the circuit court made a finding that the failure to remedy the conditions leading to the children's foster care placement occurred "notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitation agencies to such end," nothing in the record supports the court's conclusions. Since "[c]onclusions unsupported by facts are insufficient to sever for all time the legal connection between parent and child," *Ward* v. *Faw,* 219 Va. 1120, 1125, 253 S.E.2d 658, 662 (1979), and the record contains no evidence indicating what measures, if any, the Department or any other social agency took to provide Mr. Weaver with assistance in remedying his financial difficulties, the circuit court's orders terminating Mr. Weaver's residual parental rights are reversed.

■ We also conclude that the court below erred in terminating Mrs. Weaver's residual parental rights under the provisions of Code § 16.1-283(C)(2). Mrs. Weaver entered into no voluntary entrustment agreement with the Department. Since it was Mr. Weaver's financial inability to provide for the children which resulted in their foster care placement, it is unclear how she could have remedied "the conditions which led to the [children's] foster care placement." Code § 16.1-283(C)(2). Even if her financial condition could be considered a factor leading to the children's foster care, nothing in the record indicates whether the Department or any other social agency offered her any assistance in remedying her financial inability to provide for her children. Thus, the circuit court's orders terminating her residual parental rights must also be reversed.

The trial court's orders terminating the appellants' residual parental rights are reversed. The appellants have not assigned as error the trial court's orders denying them custodial rights and responsibilities, and custody of the children shall remain with the Department. Our decision does not preclude the appellants from petitioning for a subsequent change of custody, nor does our decision preclude the Department from bringing a petition for the termination of either or both appellant's residual parental rights, if future circumstances so warrant.

*Reversed.*

(Records Nos. 791059 and 791070)