COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


RHONDA MURPHY
                                    MEMORANDUM OPINION*
v.   Record No. 1474-99-1              PER CURIAM
                                     DECEMBER 7, 1999
NORFOLK DIVISION OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    William F. Rutherford, Judge

            (Mitchell D. Broudy; Broudy & Broudy, P.C.,
            on brief), for appellant.

            (Bernard A. Pishko, City Attorney; Martha G.
            Rollins, Deputy City Attorney, on brief), for
            appellee.


     Rhonda Murphy appeals the decision of the circuit court

terminating her residual parental rights to her son Jamaal

McPherson Faison.  Murphy raises three issues on appeal.  First,

she contends the trial judge erred by failing to hold that the

Norfolk Division of Social Services was collaterally estopped

from introducing evidence that it provided services to Murphy

prior to August 1995.  Second, Murphy contends the trial judge

erred by finding that Social Services made reasonable efforts to

prevent the child's removal.  Third, Murphy contends the trial

judge erred by finding that Social Services presented clear and

convincing evidence sufficient to meet the requirements of Code

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

§ 16.1-283. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## Standard of Review

"[T]ermination of the legal relationship between parent and child is a grave proceeding [which] . . . renders the parent 'a legal stranger to the child' and severs 'all parental rights.'" Weaver v. Roanoke Dep't of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980) (citation omitted). "The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself." Id. "When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990) (quoted in Logan, 13 Va. App. at 128, 409 S.E.2d at 463). On appeal, we presume that the trial judge "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 329,

-

387 S.E.2d at 796. We view the evidence in the light most favorable to Social Services, the party prevailing below, and grant to that evidence all reasonable inferences fairly deducible therefrom. See Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

## Collateral Estoppel

Murphy contends that Social Services was collaterally estopped from relitigating the 1995 decision of the juvenile court, which found that Social Services failed to provide Murphy with adequate services prior to 1995. This argument lacks merit. Whether Murphy received adequate assistance from Social Services prior to 1995 was a factual question expressly addressed by court orders.

By order entered April 12, 1994, the juvenile and domestic relations district court granted Social Services' petition to approve of a foster care plan with the goal changed from returning the child home to adoption. See Code § 16.1-281. On Murphy's appeal to the circuit court, the circuit judge found as follows in an order dated April 6, 1995:

> [N]umerous services have been provided by [Social Services] to [Murphy] since August 1993 to stabilize her family situation and assist her in parenting another child. Psychological testing relevant to [Murphy's] ability to parent [the child] was provided. In addition, [Social Services] continued to evaluate [Murphy's] requests for visitation and provided two supervised visits between [Murphy] and [the child]. To date, [Murphy]

-

> has been included in administrative meetings planning for [the child's] future.

The circuit judge found that Social Services "has made adequate and appropriate efforts to provide notice and the services required" to Murphy and approved the foster care plan changing the goal to adoption. This order was endorsed "Seen" by Murphy's counsel and became a final order.

The juvenile court could find, as it did in a later proceeding, that Social Services failed to present evidence meeting the statutory standard for termination of Murphy's parental rights. It could not, however, reconsider or reverse the previously made and final factual determination in April 1995 that Social Services had provided Murphy with adequate services. See generally Glasco v. Ballard, 249 Va. 61, 64, 452 S.E.2d 854, 855 (1995).

Furthermore, the child remained in the custody of Social Services after 1995. His status languished unresolved for four years until Social Services filed a new petition in 1999 seeking to terminate Murphy's parental rights. The trial judge based the current decision to terminate Murphy's parental rights upon the petition filed in 1999 and supporting evidence presented at trial. The prior decisions did not preclude Social Services from bringing a new petition based upon additional evidence. Therefore, collateral estoppel is not a bar to the termination of Murphy's parental rights.

-

<u>Reasonable Efforts to Prevent Removal</u>

Murphy contends that the trial judge erred in finding that Social Services proved by clear and convincing evidence that it made reasonable efforts to remedy the underlying conditions which led to the child's foster care placement. Citing <u>Weaver v. Roanoke Dep't of Human Resources</u>, 220 Va. 921, 265 S.E.2d 692 (1980), and <u>Cain v. Commonwealth</u>, 12 Va. App. 42, 402 S.E.2d 682 (1991), Murphy contends that Social Services erroneously relied upon the fact of her incarceration to justify its failure to provide her with adequate services. We have ruled, however, as follows:

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

<u>Ferguson v. Stafford County Dep't of Soc. Servs.</u>, 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). <u>See</u> <u>also</u> <u>Tullos v. Roanoke City Dep't of Soc. Servs.</u>, 12 Va. App. 617, 405 S.E.2d 433 (1991).

The evidence proved that when Murphy was incarcerated for approximately two years between 1991 and 1993, Murphy's stepgrandfather had custody of the child. He relinquished custody to Social Services in November 1991. The foster care

-

plan goal at that time was to return the child to his stepgrandfather, who last had custody. Appropriate services were offered to the stepgrandfather. Murphy was incarcerated, and the biological father's location was unknown; therefore, neither parent was in a position to have the child returned to his or her custody.

Upon Murphy's release from prison, Social Services reassessed the situation and treated the case as a new case. Through Social Services, Murphy received therapy, home-based services, anger management, drug rehabilitation, and job placement. Although Murphy sought visitation after her release from prison, serious questions arose whether visitation was in the child's best interests. A report prepared in 1994 following psychiatric testing recommended "extreme caution in returning any parenting role" to Murphy due to "very serious psychological problems which relate to a lack of consistent reality testing, paranoid delusions and extremely poor judgment and impulse control." The judge denied Murphy's request for visitation.

Evidence also proved that Murphy received services in connection with her two older children. Code § 16.1-283(C)(2) provides, in pertinent part that "[t]he court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care."

-

This record clearly demonstrates that Social Services provided numerous services to Murphy following her release from prison. Therefore, we find no merit in Murphy's contention.

Sufficiency of the Evidence under Code § 16.1-283

The circuit court found that Social Services presented clear and convincing evidence that termination of Murphy's parental rights was in the child's best interests and that the requirements of Code § 16.1-283 had been met. The evidence proved the child had been with the same foster parents since 1992. The evidence was uncontroverted by all except Murphy that he wanted to be adopted.

Code § 16.1-283(C)(2) provides, in pertinent part, that the residual parental rights of a parent of a child placed in foster care may be terminated if the trial judge finds, based upon clear and convincing evidence, that it is in the child's best interests and that the following circumstances exist:

> The parent . . . , without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent . . . , without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with [her] obligations under and within the

-

time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.

The evidence established that, despite the passage of time, Murphy had not yet resolved the problems that initially led to the child's foster care placement. In her testimony, Murphy expressed no sense of her responsibility regarding the underlying causes of the child's foster care placement. The initial custody order noted that Murphy's home lacked electricity, water, and adequate food and that Murphy was about to be evicted. At the termination hearing, Murphy claimed, however, that Social Services had failed to look in the room she was renting and only looked at the wrong part of the house. Murphy also testified that she was incarcerated on a "false arrest charge." Moreover, at the time of the hearing, which was more than eight years after Social Services obtained custody, Murphy was receiving daily services through the Norfolk Community Services Board for adult living skills. In that setting her counselors were "trying to assist her currently with obtaining some type of income, whether it's through a job, and to assist her with her appeal process and with her SSI."

"The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128,

-

409 S.E.2d at 463 (citation omitted).  The record supports the trial judge's finding that Social Services presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283 and establishing that termination of Murphy's parental rights was in the child's best interests.  Accordingly, we summarily affirm the decision.

<u>Affirmed.</u>

-