COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Clements and Agee
Argued at Richmond, Virginia


TORRENCE JENKINS, SOMETIMES KNOWN AS
 TORRANCE JENKINS
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1224-01-2          JUDGE G. STEVEN AGEE
                                          JANUARY 29, 2002
RICHMOND DEPARTMENT OF
 SOCIAL SERVICES


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Randall G. Johnson, Judge

           Robert P. Dickinson (Clarke, Prince &
           Dickinson, on brief), for appellant.

           Kate D. O'Leary, Assistant City Attorney
           (Robert Carl, Guardian ad litem for the minor
           child, on brief), for appellee.


     Torrance Jenkins (Jenkins) appeals from a decision

terminating his parental rights to his infant son.  The circuit

court found that the Richmond Department of Social Services

(RDSS) presented clear and convincing evidence establishing the

statutory requirements set out in Code § 16.1-283(C)(1) and (2)

for termination of Jenkins' parental rights.  Jenkins contends

the circuit court erred (1) in finding that the statutory

requirements were met and (2) in allowing hearsay testimony.  We

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

reverse the decision of the circuit court to terminate Jenkins'
residual parental rights for the following reason.

BACKGROUND

As the parties are fully conversant with the record in this
case and because this memorandum opinion carries no precedential
value, only those facts necessary to a disposition of this
appeal are recited.

On September 30, 1999, RDSS assumed emergency custody of
Jenkins' son when the child's mother was arrested.  At that
time, Jenkins' whereabouts were unknown.  He learned of his
son's placement in late 1999.

On November 29, 1999, RDSS filed an initial foster care
plan with the goal of returning the child to his mother's home.
The plan was approved by the Richmond Juvenile and Domestic
Relations (J&DR) District Court on March 3, 2000.  The child was
returned to his mother, on a trial basis, on March 28, 2000.
Subsequently, Jenkins resumed a relationship with his son and
the mother.

On April 21, 2000, RDSS visited the mother's home and was
witness to an argument between Jenkins and the child's mother.
Jenkins was asked to leave the home.  At that time, the
hysterical mother insisted she did not want custody of her son.
The mother was subsequently hospitalized, and Jenkins was, at

-

that time, not in the position to take custody of his son.  He was unemployed and did not have a place to live.

Jenkins, however, contacted RDSS and asked for assistance in obtaining custody of his son.  RDSS then began to plan for Jenkins' eventual custody of his son.  On June 17, 2000, RDSS submitted a foster care plan with the goal of placing the child with Jenkins.  In order to obtain custody of the child, Jenkins was to maintain contact with RDSS, participate in visitation and cooperate in the child's transition to his home.  Jenkins was incarcerated in June 2000, and the J&DR court did not approve of the submitted plan.

In August 2000, RDSS submitted a third foster care plan, this time with the goal of terminating parental rights and placing the child for adoption.  On September 19, 2000, RDSS sent Jenkins a letter requesting his incarceration status, informing him of the need to keep in contact with the agency and of the adoption plan which provided for services, referrals, counseling and ongoing visitation rights.  This letter was sent because RDSS recognized the interest Jenkins stated in April 2000 for his son was "a barrier to goal achievement [(adoption)]."  Jenkins responded to the letter on October 13, 2000, and provided what he believed to be his incarceration status.

-

On December 11, 2000, the parties appeared before the J&DR court in regards to the petition to terminate parental rights to the child. The J&DR court proceeded to terminate Jenkins' residual rights to his son. Afterwards, in anticipation of an appeal to the circuit court, RDSS arranged to speak with Jenkins after the hearing. He was instructed to maintain contact.

On appeal de novo to the circuit court, Jenkins' residual parental rights were terminated in April 2001. The circuit court's letter opinion found RDSS made "reasonable" efforts to assist Jenkins, but "less than in other cases." Neither the circuit court's letter opinion nor its order terminating parental rights referenced any specific evidence to support a finding of reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies.

## STATUTORY REQUIREMENTS WERE NOT MET

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a [circuit] court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The [circuit] court's judgment, "when based on evidence heard ore tenus, will not be

-

> disturbed on appeal unless plainly wrong or
> without evidence to support it."

Id. (internal citations omitted).

The circuit court found that RDSS presented clear and convincing evidence meeting the statutory requirements set out in Code § 16.1-283(C)(1) and (2). "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Code § 16.1-283(C)(1) provides, in pertinent part, that the residual parental rights of a parent of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that

> [t]he parent . . . [has], without good
> cause, failed to maintain continuing contact
> with and to provide or substantially plan
> for the future of the child for a period of
> six months after the child's placement in
> foster care notwithstanding the reasonable
> and appropriate efforts of social, medical,
> mental health or other rehabilitative
> agencies to communicate with the parent or
> parents and to strengthen the parent-child
> relationship. Proof that the parent . . .
> [has] failed without good cause to
> communicate on a continuing and planned
> basis with the child for a period of six

-

months shall constitute prima facie evidence of this condition.

(Emphasis added).

Code § 16.1-283(C)(2) provides in pertinent part:

The parent . . . without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

(Emphasis added).

The evidence is clear that Jenkins did not have continuing contact with his son or participate in planning for his child for at least six months prior to the termination of his residual parental rights.  However, despite Jenkins' non-involvement with his son, there is no evidence in the record before us that RDSS offered any services to Jenkins, much less services equating to reasonable and appropriate efforts.  There is no indication in the record that Jenkins was offered any services from any social, medical, mental health or other rehabilitative agency.  While the social worker, Ms. Brice, testified that she "offered services," she never identified any.  Instead she simply "let him know what needed to be done in order for him to gain custody of [his son]."  Nothing in the record indicates that RDSS ever

-

offered assistance to Jenkins, a condition precedent to the termination of parental rights pursuant to either subsection of Code § 16.1-283(C).

The Supreme Court of Virginia has held that the failure of the petitioning agency to satisfy this condition precedent prohibits the termination of parental rights. See <u>Weaver v. Roanoke Dep't of Human Resources</u>, 220 Va. 921, 265 S.E.2d 692 (1980).

> In the absence of evidence indicating that "reasonable and appropriate efforts" were taken by social agencies to remedy the conditions leading to foster care, residual parental rights cannot be terminated under Code § 16.1-283(C)[]. Although the circuit court made a finding that the failure to remedy the conditions leading to the children's foster case placement occurred "notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitation agencies to such end," nothing in the record supports the court's conclusions. Since "conclusions unsupported by facts are insufficient to sever for all time the legal connection between parent and child," <u>Ward v. Faw</u>, 219 Va. 1120, 1125, 253 S.E.2d 658, 662 (1979), and the record contains no evidence indicating what measures, if any, the Department or any other social agency took to provide [the father] with assistance in remedying his financial difficulties, the circuit court's orders terminating [the father's] residual parental rights are reversed.

<u>Id.</u> at 928-29, 265 S.E.2d at 697.

-

For the foregoing reason we reverse the decision of the circuit court.[1]

Reversed.

---

[1] As we reverse for failure to prove compliance with the statutory condition precedent, we do not address Jenkins' second assignment of error.