COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Newport News, Virginia

UNPUBLISHED

KENNETH DAVIS

v.      Record No. 0272-17-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 30, 2018

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Charles E. Haden for appellant.

Kimberly E. Karle, Assistant City Attorney (Vanessa T. Valldejuli,
Hampton City Attorney; Tiffany N.E. Sullivan, Guardian *ad litem*
for the minor children; The O'Brien Law Firm, PLLC, on brief),
for appellee.

Kenneth Davis ("father") appeals the decision from the Circuit Court of the City of

Hampton ("circuit court") terminating his parental rights pursuant to Code § 16.1-283(C). He

argues that Hampton Department of Social Services ("DSS") failed to establish by clear and

convincing evidence that it was in the best interests of his children, C.D. and E.D., to terminate

their father's parental rights.

I.  BACKGROUND[1]

On October 19, 2015, the DSS sought emergency removal of two children, C.D. and

E.D., from the custody of their biological parents, father and Rebecca Ann Davis ("mother").  On

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] No transcript was provided, however appellant included a written statement of facts
pursuant to Rule 5A:8(c).

December 1, 2015, the Hampton Juvenile and Domestic Relations District Court ("JDR court") entered adjudicatory orders finding C.D. and E.D. were at risk of being abused or neglected by a parent per Code § 16.1-241(A)(2a) and ordering they be placed in foster care pending completion of foster care plans. These plans were filed on December 14, 2015, and had initial concurrent goals of "return to parent" or "relative placement."

A later review hearing, conducted pursuant to Code § 16.1-282 on April 19, 2016, reiterated this goal and scheduled a permanency planning hearing for September 6, 2016. At this permanency planning hearing, however, the JDR entered an order disapproving the return to parent or relative placement goals and scheduled a further hearing for September 27, 2016. At the September 27, 2016 hearing, the JDR court entered an order approving the goal of adoption and directing DSS to file petitions seeking to terminate father and mother's parental rights. These rights were terminated at a subsequent hearing on November 1, 2016. Both father and mother appealed this decision to the circuit court.

A *de novo* hearing was held on January 19, 2017, in the circuit court. Neither father nor mother were present but were represented by attorneys. The children were represented by their Guardian *ad litem* Tiffany N.E. Sullivan. The sole witness at the hearing, Calandra Cooke ("Cooke"), a social worker for DSS, testified that the Davis family had come to the attention of DSS when E.D. tested positive for Oxycodone at birth. When questioned by DSS, mother had admitted to taking Oxycodone because she had a prescription for chronic pain. She also admitted to taking Methadone, which she was not prescribed.

Cooke also testified that a protective order was obtained following physical violence between father and mother which occurred in the presence of the children. The first sign of this violence was when a DSS worker observed a verbal dispute between the pair and also noted that father had a pistol in his waistband at the time. More violent incidents were observed when the

family was forced to leave their home. The City of Hampton placed a notice on the Davises' household warning it would not be habitable unless certain repairs were completed. This notice precipitated a move to the Super 8 Motel in Hampton, where Hampton police responded to a domestic violence call on October 10, 2015. Mother was arrested for assault and battery. A protective order was entered prohibiting further acts of family violence. However, police were called back to the motel the very next day where mother was again arrested for assault and battery and for violation of the protective order. The day following this second arrest, October 12, 2015, the Super 8 motel staff asked mother to leave the premises as she was yelling at and harassing staff members. DSS staff visited the family's hotel room that day and found it in disarray, with empty prescription bottles strewn about. Unable to stay at the motel, father took the children to live with his niece, who also resided in Hampton.

DSS organized a October 21, 2015 family engagement meeting where the risks to the children of mother's drug use, additional substance abuse, and the frequent occurrences of domestic violence were discussed. The meeting concluded with an arrangement where the children would be sent to live with a relative in Hampton while father and mother would engage in family stabilization services. However, father and mother attempted to take the children from the relative on October 28, 2015, prompting a call to the Hampton police. This altercation, followed by the parents' continued lack of cooperation with the services offered, prompted DSS to seek the emergency removal order and place the children in foster care.

DSS offered several programs to facilitate return of the children to father and mother, including drug screening and rehab, parenting classes, supervised visitation with the children, and a family reunification and preservation program. However, father and mother did not avail themselves of most of these services and missed several drug screening appointments. During

this time frame father was disabled and receiving social security disability payments, while mother was unemployed.

Father completed an offered parenting course between January and March of 2016. However, he did not engage in any other services, perhaps partly due to medical issues, including a heart condition and a surgery on July 29, 2016. The Hampton-Newport News Community Services Board refused to allow him to participate in one drug treatment program based on his past behavior in the program. He was referred to a different program but never attended. Father moved to New York on September 13, 2016. He notified DSS that he was engaged in a substance abuse program in New York but failed to submit any evidence of this to DSS. Meanwhile, mother was arrested on drug charges and incarcerated.

DSS attempted to place the children with a relative, but could not find one available. Father suggested several relatives, each of which was unable to assume custody.

Following Cooke's evidence, father's counsel made a motion to strike the evidence which was denied. Counsel admitted that there were serious deficiencies with father's compliance with the foster plan, but that it did not follow that termination of father's rights was in the best interests of the children.

The circuit court ordered termination of the residual parental rights pursuant to Code § 16.1-283(C) and entered permanency planning orders with the goal of adoption for the children, pursuant to Code § 16.1-282.1.

## II. ANALYSIS

### A. Standard of Review

"This Court views the facts, and all reasonable inferences from those facts, in the light most favorable to the party prevailing below." Rubino v. Rubino, 64 Va. App. 256, 262, 767 S.E.2d 260, 263 (2015).

- 4 -

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion, . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. at 328, 387 S.E.2d at 795 (citations omitted).

"While it may be occasionally necessary to sever the legal relationship between parent and child, those circumstances are rare. Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980).

### B. Whether the Circuit Court Erred in Terminating Father's Parental Rights

DSS sought termination of father's residual parental rights under Code § 16.1-283(C)(2) which provides that such rights may be terminated based on clear and convincing evidence that termination is in the best interests of the child and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Proof that the parents have failed or have been unable to make such progress shall constitute prima facie evidence of this condition. Id. Also, the court must "take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care." Id.

Father argues that DSS failed to show by clear and convincing evidence that it was in the best interests of the children to terminate his rights. He further argues that he has demonstrated his commitment to remedying the situation that precipitated the removal of the children. Namely, completion of a parenting course and the drug treatment program he claims he is enrolled in. He claims these efforts show that DSS failed to prove that it had made "reasonable and appropriate" efforts to assist him as required by the statute and that the circuit court abused its discretion in finding DSS had met this standard.

Father lists all of the circuit court's orders in his notice of appeal, but his assignment of error is limited to his own rights and we therefore limit our review to his rights alone.

Additionally, father argues that DSS failed to make "reasonable and appropriate efforts" to assist him. The written statement of facts does not indicate that a timely objection was made to this effect in the circuit court. The written statement of facts only states that father's attorney moved to strike the evidence on the reasoning that it was not in the best interests of the children and did not object to the final order.

Where there is no transcript, Rule 5A:8(c) requires that the written statement include "facts, testimony, and other incidents" where "other incidents" are defined as "motions, proffers, objections, and rulings of the trial court regarding any issue that a party intends to assign as error or otherwise address on appeal." We must then assume that no objections were made which were not detailed in the written statement. DSS is therefore correct that this issue was not properly preserved per Rule 5A:18 which requires that an objection be "stated with reasonable certainty at the time of the ruling." Therefore, the best interests question is the only assignment of error properly before us.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." <u>Farley</u>, 9 Va. App. at 328,

- 6 -

387 S.E.2d at 795. "A trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 329, 387 S.E.2d at 796. This Court has previously laid out some of the factors which should be considered in a best interest determination, including

> the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, Alexandria Dep't of Human Servs., Div. of Soc. Servs., 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The evidence, viewed in the light most favorable to the prevailing party, when weighed against these factors shows that the children were in a household where drug use and domestic violence appear frequent and prevalent. The family was forced to move out of their residence as it was considered unfit for habitation and were lodged in a motel. Generally, the family had difficulty in finding stable housing. Father has a history of medical ailments and is receiving disability payments. Of the various services and help offered to him he only completed the parenting course. He missed a number of drug screenings and was refused entry into one drug treatment program because of past behavior in the program.

When considering the termination of parental rights, "[n]o one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268, 616 S.E.2d 765, 770 (2005) (quoting Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997)). Father's past difficulty providing a stable and safe household for the children provides clear and convincing

evidence supporting the circuit court's determination.  Father was provided by DSS with a plan that would demonstrate his commitment to a different future, but declined to take advantage of it.

### III.  CONCLUSION

For the reasons stated above, the evidence taken in the light most favorable to DSS showed ample support for the circuit court's best interest determination.  Because there was no abuse of discretion on the best interest determination, and because no other issue was properly preserved, the judgment of the circuit court is affirmed.

Affirmed.