COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chafin, O'Brien and Malveaux
Argued at Salem, Virginia


MONIQUE MONTRICE FRANKLIN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2030-16-3                      JUDGE TERESA M. CHAFIN
                                                    SEPTEMBER 26, 2017
CITY OF LYNCHBURG DEPARTMENT
 OF SOCIAL SERVICES

           FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                       R. Edwin Burnette, Jr., Judge

           Carlos A. Hutcherson (Hutcherson Law, PLC, on brief), for
           appellant.

           Hope R. Townes; Herbert E. Taylor, III, Guardian *ad litem* for the
           minor child (Office of the City Attorney, on brief), for appellee.


       On December 5, 2016, the Circuit Court of the City of Lynchburg ("circuit court")

terminated the residual parental rights of Monique Montrice Franklin pertaining to her daughter,

M.  On appeal, Franklin presents two assignments of error.  First, she contends that the circuit

court erred by terminating her parental rights pursuant to Code § 16.1-283(C)(2) because the

Lynchburg Department of Social Services ("DSS") failed to provide her with reasonable and

appropriate services.  Second, she argues that the twelve-month deadline set forth in Code

§ 16.1-283(C)(2) is "arbitrary and capricious" and that it violated her due process rights.[1]  For

the reasons that follow, we affirm the circuit court's decision.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] We note that Franklin failed to comply with Rule 5A:20 regarding her second
assignment of error.  In pertinent part, Rule 5A:20 requires the opening brief of an appellant to
contain "[a] statement of the assignments of error with a clear and exact reference to the page(s)
of the transcript, written statement, record, or appendix where each assignment of error was
preserved in the trial court."  Rule 5A:20(c).  In the present case, Franklin failed to reference the

I.  ANALYSIS

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)).  So viewed, the evidence is as follows.

On April 1, 2015, Franklin came to the DSS office and requested assistance in caring for her two-year-old daughter, M.  Franklin explained that she was a single mother with no support system and that she felt "overwhelmed."  Franklin told DSS employees that she "needed a break" from caring for M. and that she was afraid that she may accidentally harm her daughter. Employees from the DSS Child Protective Services Unit went to Franklin's home the following day.  After speaking with these employees and expressing similar concerns regarding her mental state, Franklin agreed to give DSS temporary custody of M.  DSS removed M. from Franklin's home that day, and she was subsequently placed in foster care.

During their interactions with Franklin, DSS employees noticed that Franklin seemed to get "overwhelmed" or stressed easily and that she was slightly withdrawn.  DSS employees noted that "small things" would completely overwhelm Franklin.  Based on these observations, DSS identified Franklin's mental health status as the primary condition that led to M.'s placement in foster care.  Accordingly, DSS offered Franklin services designed to reduce her stress levels and improve the condition of her mental health.

---

pages of the transcript, record, or appendix where her second assignment of error was preserved for appellate review.  We have located Franklin's argument concerning this issue despite her noncompliance with Rule 5A:20.  Accordingly, we conclude that Franklin's failure to strictly adhere to the requirements of Rule 5A:20 was insignificant and not so substantial as to preclude us from addressing the merits of her second assignment of error.  See Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008); Moncrief v. Div. of Child Support Enf't ex rel. Joyner, 60 Va. App. 721, 731, 732 S.E.2d 714, 719 (2012).

DSS offered Franklin three evaluations to assess her psychological status and mental health needs. On the day that the DSS employees went to Franklin's home, they took her to a local hospital for a psychological evaluation.[2] On October 20, 2015, James Anderson, a clinical psychologist, completed a full psychological evaluation of Franklin and assessed her parenting capacity. DSS also scheduled a mental health evaluation with another treatment provider.[3] When Franklin went to the initial appointment for this evaluation, however, she did not ask for a full evaluation or complete the intake procedure because the process was too stressful for her. With the assistance of DSS employees, Franklin completed this mental health evaluation in November 2015.

DSS also provided individual counseling to Franklin to address her mental health issues. Additionally, DSS provided Franklin with a parenting coach to help her develop more effective parenting methods. M., who was eventually diagnosed with autism, presented substantial parenting challenges. Among other things, M. cried constantly unless she was held by someone. By offering individual parenting coaching based on M.'s special needs, DSS intended to help Franklin develop the skills required to care for M., and thereby reduce Franklin's anxiety levels. DSS also attempted to help Franklin develop a support system in the community to help her care for M.[4]

---

[2] The record does not contain the full results of this examination. Apparently, Franklin was diagnosed with "adjustment reaction" and sent home from the hospital.

[3] At the termination hearing, a witness testified about the differences between psychological and mental health evaluations. The witness explained that the evaluations addressed different needs and services and that a psychological evaluation was more thorough than a mental health evaluation.

[4] A Court-Appointed Special Advocate ("CASA") also attempted to help Franklin obtain employment and her GED. These efforts were abandoned because they caused too much stress for Franklin.

On May 8, 2015, Franklin began receiving counseling from Brandi Stinnett, a licensed professional counselor. Stinnett also acted as Franklin's parenting coach. Franklin was reluctant to engage in therapy with Stinnett. Despite her previous statements to DSS, Franklin told Stinnett that she did not have any mental health issues. She also told Stinnett that she did not understand why she needed counseling or why M. was placed in foster care. When Stinnett made parenting suggestions based on M.'s behavior after she observed Franklin visit with her, Franklin often became angry and defensive. Eventually, Franklin requested therapy with a different counselor.

On January 4, 2016, Franklin started receiving counseling from Vincent Jones, a mental health therapist. Like Stinnett, Jones provided Franklin with individual counseling and parenting coaching. Franklin developed a strong relationship with Jones, and she made progress regarding her ability to parent M.

In addition to individual counseling and parenting coaching, DSS facilitated visitation between Franklin and M. Initially, visits were supervised by DSS employees and Franklin's parenting coach. At the conclusion of these visits, the parenting coach would meet with Franklin and discuss parenting strategies based on M.'s behavior. Occasionally, however, Franklin was too stressed to meet with the parenting coach following the visits.

Eventually, DSS allowed Franklin to have unsupervised visits with M. at her home. Although these visits initially went well, problems arose when Franklin was allowed to have unsupervised overnight visits. On May 7, 2016, Franklin called M.'s foster mother and asked her to pick up M. early from a visit because she was feeling "overwhelmed." Franklin later told a DSS employee that she "felt like she was getting old feelings." Franklin cancelled another overnight visit with M. in June because she was not feeling "mentally well." After Franklin

cancelled the June visit, DSS stopped offering Franklin overnight visitation and reduced the length of future visits.

In May 2016, Franklin underwent a psychiatric evaluation to determine whether medication would help her manage her mental health issues. Although the psychologist who evaluated Franklin had previously recommended a similar evaluation, Franklin had been resistant to taking psychiatric medication throughout her involvement with DSS. On May 19, 2016, Franklin was prescribed medication to manage her anxiety issues. She refused to take that medication, however, because she was concerned about its side effects. On June 10, 2016, Franklin was prescribed a different medication to manage her anxiety.

On the same day that Franklin was prescribed the new medication, the JDR court held a hearing to review the permanency plan for M. At that hearing, DSS acknowledged that Franklin had made progress in eliminating the conditions that led to M.'s placement in foster care. DSS then asked the JDR court to give Franklin more time to meet the conditions of M.'s foster care plan, and noted that she had just begun taking new medication. The JDR court denied DSS's request and directed it to file new permanency and foster care plans.

Pursuant to the JDR court's order, DSS filed new permanency and foster care plans with the goals of adoption and a petition to terminate Franklin's residual parental rights regarding M. On June 30, 2016, the JDR court approved the permanency and foster care plans and terminated Franklin's parental rights pursuant to Code § 16.1-283(C)(2). Franklin timely appealed the JDR court's decision to the circuit court.[5]

The circuit court held a termination hearing in this matter on November 9, 2016. At that hearing, DSS presented testimony establishing the circumstances of M.'s removal from

_____

[5] While Franklin appealed the JDR court's termination decision, she did not appeal its decisions pertaining to the foster care or permanency plans.

Franklin's care, the services that Franklin was offered to remedy the conditions that led to M.'s removal and subsequent placement in foster care, and the progress that Franklin had made in the elimination of those conditions.

DSS also presented testimony from Anderson, the clinical psychologist who completed Franklin's psychological evaluation and parenting assessment. Anderson's written report based on his evaluation of Franklin was admitted into evidence without objection. Anderson testified that Franklin scored sixty-nine on the Wechsler Adult Intelligence Scale, ranking her in the bottom one-to-two percent of the population. Anderson also testified that he diagnosed Franklin with "a mixed anxiety and depressive disorder" and "emotional and personality problems in the form of narcissistic and histrionic personality with schizoid and avoidant traits."[6]

Anderson explained that Franklin's diagnosis could impede her ability to make therapeutic progress. Specifically, Anderson explained that:

> The narcissistic aspects of her personality functioning are likely to be highly resistant to treatment. And significant progress, if [that] can be attained, may well take a year or longer. The schizoid avoidant aspects of her functioning are likely to require quite a bit longer. And they also are much less likely to respond to treatment of any sort.

Anderson testified that Franklin struggled on the parenting capacity assessment of his evaluation. After explaining the methodology used to complete the assessment, Anderson testified that Franklin performed poorly on a Parent Awareness Skill Survey and that she had difficulty recognizing the needs and feelings of others. He also noted that Franklin indicated that she and M. did not have any mental health issues or problems when she completed a Parenting Stress Index questionnaire. Anderson explained that this response indicated that Franklin did not understand the challenges associated with parenting M. or her own mental health issues.

---

[6] Anderson testified that he previously diagnosed Franklin with the same mental health conditions in 2013.

Anderson concluded that Franklin's diagnosis would limit her ability to parent M., especially when considered along with M.'s autism diagnosis. Anderson opined that Franklin "would have a long way to go as far as dealing with fundamental parent[-]child relationship issues before she got to a level of . . . parental competence where she could address the more specialized issues that an autistic child would present." Anderson admitted, however, that medication could potentially help manage Franklin's anxiety.

At the conclusion of DSS's evidence, Franklin moved to strike the evidence. The circuit court denied the motion. Franklin did not testify or present additional evidence on her behalf. In closing argument, Franklin argued that DSS had failed to provide her with the opportunity to fully address her mental health issues and asked the circuit court to give her more time to treat her anxiety through medication. DSS argued that it had provided Franklin with reasonable and appropriate services to remedy the conditions that led to M.'s placement in foster care. The guardian *ad litem* for M. agreed with DSS's position, and noted that Anderson testified that Franklin may never be able to effectively parent M.

Based on the evidence presented, the circuit court concluded that Franklin had failed to remedy the conditions that led to M.'s placement in foster care despite the substantial services offered by DSS. The circuit court explained that the same mental health issues that led to M.'s placement in foster care were still present and that Franklin lacked the parenting skills that were required to successfully parent M. While the circuit court noted that Franklin's anxiety could potentially be better managed with medication, it explained that "the anxiety issue is just part of a very complicated situation with her involving intellectual issues, mental health issues that make her even on medication, make her resistant to constructive criticism." The circuit court then explained:

> just because [Franklin's] on a new pill that takes care of or might diminish her anxiety[,] that's not going to give her parenting skills,

that's not going to give her coping skills, that's not going to provide a magic potion to all of a sudden transform this into a good situation for [M.]

The circuit court also declined to continue the case to give Franklin additional time to adjust to her medication. Citing Anderson's testimony, the circuit court concluded that it would likely take at least an additional year for Franklin to sufficiently address her mental health issues. The circuit court also noted that Anderson's written report stated that Franklin had a "fifty-fifty" chance of improving her mental health issues under the best circumstances. While the circuit court acknowledged that it could extend the statutory twelve-month deadline provided in Code § 16.1-283(C)(2) in certain situations, the circuit court explained that M. needed stability in her life and declined to extend the deadline in the present case.

As the circuit court concluded that Franklin had been unable to substantially remedy the conditions that led to M.'s placement in foster care within a reasonable time notwithstanding the reasonable and appropriate services offered by DSS, it terminated her residual parental rights pertaining to M. pursuant to Code § 16.1-283(C)(2). This appeal followed.

## II. ANALYSIS

Franklin presents two arguments on appeal. First, Franklin argues that the circuit court erred by concluding that DSS provided her with reasonable and appropriate services to help her remedy the conditions that led to M.'s placement in foster care. She also contends that the circuit court should have allowed her more time to treat her mental health issues with medication. We disagree with both arguments.

Code § 16.1-283(C)(2) permits a court to terminate residual parental rights when such a termination is in the best interests of the child at issue and:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation

- 8 -

of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Therefore, a court must make three separate findings in order to terminate a parent's residual parental rights pursuant to this subsection: 1) that termination is in the child's best interest, 2) that, without good cause, the parent failed to substantially remedy the conditions that led to the child's placement in foster care, and 3) that DSS made reasonable and appropriate efforts to help the parent remedy those conditions. See id.

"In matters of a child's welfare, [circuit] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168, 754 S.E.2d 922, 927 (2014) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). "When reviewing a decision to terminate parental rights, we presume the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "Where the circuit court's judgment is based on evidence heard *ore tenus*, its decision to terminate a parent's rights is entitled to great weight and [the decision] 'will not be disturbed on appeal unless [it is] plainly wrong or without evidence to support it.'" Thach, 63 Va. App. at 168-69, 754 S.E.2d at 927-28 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

When we apply our established standard of review to the circuit court's termination decision in the present case, we conclude that its decision was not plainly wrong or unsupported by the evidence.

A.  DSS OFFERED REASONABLE AND APPROPRIATE SERVICES TO HELP FRANKLIN REMEDY THE CONDITIONS THAT LED TO M.'S PLACEMENT IN FOSTER CARE

As previously stated, Code § 16.1-283(C)(2) required DSS to provide reasonable and appropriate services to Franklin to help her remedy the conditions that led to M.'s placement in foster care.  On appeal, Franklin contends that DSS failed to do so.  Although Franklin acknowledges that DSS offered her numerous services, she contends that these services were inadequate to address her mental health and parenting needs.[7]  We disagree with this position.

A parent's residual parental rights cannot be terminated "[i]n the absence of evidence indicating that 'reasonable and appropriate efforts' were taken by social agencies to remedy the conditions leading to foster care."  Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 928-29, 265 S.E.2d 692, 697 (1980).  "Reasonable and appropriate efforts can only be judged with reference to the circumstances of a particular case."  Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 7 (1992)).  Accordingly, "a court must determine what constitutes reasonable and appropriate efforts given the facts before [it]."  Id.

---

[7] Franklin's assignment of error regarding this issue states, "The trial court erred in terminating Ms. Franklin's parental rights under . . . Code § 16.1-283(C)(2) because [DSS] failed to provide her with reasonable and appropriate services *for a mother with an autistic child*, and thereby violated her right to due process."  (Emphasis added).  At the termination hearing, Franklin did not argue that DSS should have provided her with additional services specifically addressing M.'s autism.  Pursuant to Rule 5A:18, we "will not consider an argument on appeal which was not presented to the trial court."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  Accordingly, we refuse to consider this assignment of error to the extent that it relates to services specifically addressing the needs of an autistic child.  We will consider this assignment of error, however, to the extent that it relates to the adequacy of the services that were actually offered by DSS because Franklin presented this more general argument to the circuit court.

In the present case, DSS identified Franklin's mental health as the primary condition that led to M.'s placement in foster care. Therefore, DSS offered Franklin numerous services designed to improve the state of her mental health. As an initial step, DSS obtained three different psychological and mental health evaluations to identify Franklin's specific needs. DSS then provided Franklin with individual counseling to address her mental health issues. When Franklin did not get along with her first counselor, DSS obtained counseling for Franklin with a different treatment provider. Franklin responded well to her second therapist, and she made some therapeutic progress through counseling with him.

Eventually, DSS also helped Franklin manage her anxiety through medication. Although DSS did not offer this service until relatively late in the proceedings, this delay was attributed to a certain degree to Franklin's resistance to taking medication. Throughout her involvement with DSS, Franklin frequently downplayed her mental health issues and told DSS employees that she did not think that she needed medication. DSS was not required to "force" Franklin to take psychiatric medication when she was unwilling to do so. See id. at 323, 746 S.E.2d at 523.

In addition to the services offered to address Franklin's mental health needs, DSS also provided Franklin with services to help her develop more effective parenting skills. DSS provided Franklin with an individual parenting coach to help her learn how to parent M., a child with particularly challenging behavior. Among other things, the parenting coach observed Franklin's visitation with M. and offered guidance specifically based on M.'s behavior and Franklin's interaction with her. After Franklin made progress in therapy and at supervised visits, DSS offered Franklin unsupervised visits with M. at her home for amounts of time that gradually increased to overnight visits. Additionally, DSS attempted to help Franklin develop a support system in the community to help her manage her stress and successfully parent M.

In light of the numerous services offered by DSS in this case, we conclude that the circuit court did not err by determining that DSS offered "reasonable and appropriate" services to Franklin. DSS offered Franklin services specifically designed to address her mental health and parenting needs, and thereby remedy the conditions that led to M.'s placement in foster care. Cf. Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243-44, 288 S.E.2d 410, 415 (1982) (reversing a decision terminating residual parental rights where the appellant was not offered *any* services); Weaver, 220 Va. at 928-29, 265 S.E.2d at 697 (reversing a decision terminating residual parental rights where the appellant was not offered *any* services to remedy the financial conditions that led to his children's placement in foster care). Under these circumstances, the circuit court's decision was not plainly wrong or unsupported by the evidence.

## B. THE CIRCUIT COURT DID NOT ERR BY REFUSING TO GIVE FRANKLIN ADDITIONAL TIME TO TREAT HER ANXIETY WITH MEDICATION

Franklin presents a related argument in her second assignment of error. That assignment of error states, "The twelve[-]month deadline set forth in . . . Code § 16.1-283(C)(2) is arbitrary and capricious and violated . . . Franklin's due process rights." While this assignment of error could potentially be construed as a facial challenge to the twelve-month time limit set forth in Code § 16.1-283(C)(2),[8] Franklin presents a different challenge on appeal. Rather than attacking the validity of the statute at issue, Franklin argues that she was not given a reasonable amount of time to remedy the conditions that led to M.'s placement in foster care. As she had only started taking psychiatric medication shortly before the JDR court terminated her residual parental rights, Franklin contends that she should have been allowed additional time to treat her anxiety with medication.

---

[8] We note that this assignment of error is waived to the extent that it presents a facial challenge to Code § 16.1-283(C)(2). Franklin never argued that the twelve-month deadline set forth in the statute was "arbitrary and capricious" or that it violated her due process rights. See Rule 5A:18; Ohree, 26 Va. App. at 308, 494 S.E.2d at 488.

Code § 16.1-283(C)(2) requires a parent to remedy the conditions that led to the placement of his or her child in foster care "within a reasonable period of time *not to exceed 12 months from the date the child was placed in foster care*." (Emphasis added). Thus, "[t]he statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 894 (2001). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [his or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement. "This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay."

L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003) (quoting Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995)).

Although Code § 16.1-283(C)(2) establishes "a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement," id. at 57, 581 S.E.2d at 889, a court is not necessarily bound by this time period. "The time limit does not . . . temporally restrict the trial court's consideration to events that occurred between the parent and child only during that discrete twelve-month time period to the exclusion of what may have occurred before and after those dates." Id. Furthermore, "the trial court may use its discretion to continue a case on its docket in order to allow further services to be rendered to a parent in the hope that termination of

- 13 -

the parent's residual parental rights would not be necessary." Edwards v. Cty. of Arlington, 5 Va. App. 294, 314, 361 S.E.2d 644, 655 (1987).

While Franklin may have eventually benefited from the psychiatric medication at issue, we conclude that the circuit court's refusal to allow her additional time to remedy the conditions that led to M.'s placement in foster care was not plainly wrong or unsupported by the evidence. The circumstances of the present case suggested that Franklin was unlikely to remedy the conditions that led to M.'s foster care placement within a reasonable time, even with the assistance of the medication.

As expressly noted by the circuit court, Franklin's anxiety only represented a portion of her mental health and parenting issues. Franklin had limited intelligence, ranking in the bottom one-to-two percent of the population. She also had personality disorders that limited her ability to effectively parent M. While the medication at issue could have helped manage Franklin's anxiety, it was unlikely to successfully address her additional underlying mental health issues.

Furthermore, Anderson determined that Franklin was unlikely to make substantial therapeutic progress within a reasonable amount of time even with the assistance of medication. Under the best circumstances, Anderson opined that Franklin only had a "fifty-fifty" chance of successfully managing her mental health issues. He also testified that substantial progress would take at least an additional year.

Under these circumstances, the circuit court did not err by refusing to give Franklin additional time to manage her anxiety with medication. While Franklin's anxiety may have been one of the primary issues leading to M.'s placement in foster care, the circuit court aptly recognized that it was only "part of a very complicated situation." The evidence presented in this case established that medication would not fully address the conditions that led to M.'s placement in foster care and that the possibility of any substantial therapeutic success was

- 14 -

speculative and remote under the best circumstances. In this situation, "further delay would prolong [M.'s] familial instability without the promise of benefit to [her], a result clearly contrary to the child's best interests." Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 585, 546 S.E.2d 749, 755 (2001) (quoting Lecky, 20 Va. App. at 312, 456 S.E.2d at 541).

For these reasons, we conclude that the circuit court's application of the twelve-month deadline established in Code § 16.1-283(C)(2) was not arbitrary and capricious in light of the particular circumstances of this case.

## III. CONCLUSION

In summary, we conclude that the circuit court did not err by determining that DSS offered reasonable and appropriate services to Franklin designed to remedy the conditions that led to M.'s placement in foster care. We further conclude that the circuit court did not err by refusing to give Franklin additional time to manage her mental health issues with the assistance of psychiatric medication. Accordingly, we affirm the circuit court's decision to terminate Franklin's residual parental rights pertaining to M.

Affirmed.