COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Callins and Frucci
Argued at Salem, Virginia


TIMOTHY ALLEN REDMAN

                                                  MEMORANDUM OPINION[*]
v.        Record No. 1913-23-3                              PER CURIAM
                                                         OCTOBER 29, 2024
CITY OF ROANOKE DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(David A. Bowers, on brief), for appellant. Appellant submitting on
brief.

Jennifer L. Crook, Assistant City Attorney (Timothy R. Spencer,
City Attorney; James P. Cargill, Guardian ad litem for the minor
child; James P. Cargill, P.C., on brief), for appellee.


Timothy Allen Redman ("father") appeals the circuit court's termination of his parental

rights under Code § 16.1-283(B), (C)(1), and (C)(2) by a final order entered on October 11, 2023.

He contends that the circuit court erred by finding sufficient evidence to terminate his parental

rights. For the following reasons, we affirm the ruling of the circuit court. Father waived oral

argument in this case. *See* Code § 17.1-403(ii).

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable

to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc.*

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The record in this case was sealed. We unseal only the facts stated in this opinion to
resolve the issues presented. *Brown v. Virginia*, 302 Va. 234, 240 n.2 (2023). The rest of the
record remains sealed.

*Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).  So viewed, the evidence established the following relevant facts.

Father and Tracy Cline ("mother")[2] are the biological parents of D.R.  D.R. is sixteen years old and has been diagnosed with Down syndrome, autism, and attention deficit hyperactivity disorder; he is predominantly nonverbal.  Father has been incarcerated for much of D.R.'s life and has had "little" interaction with him.

The Roanoke City Department of Social Services (the "Department") first became involved with the family in 2011, when D.R. was three years old, due to concerns about mother's mental health, alcohol abuse, and potential physical abuse of D.R. because of visible bruises and scratches on his body.  The Department began providing mother with several services in 2012 to prevent removal, including case management, in-home care, mental health support and counseling; mother "minimal[ly] compli[ed]" with the services the Department recommended.  D.R. entered foster care for the first time in 2013 because mother reported "being overwhelmed with caring for [him]" and was "in a constant state of crisis," which created a hostile environment for D.R.  While D.R. was in foster care, the Department assisted mother in finding safe and stable housing.  Mother regained custody of D.R. about five months later "with her agreement to be compliant and continue services."  The Department intervened again in March 2017 because it received a report that mother's longtime boyfriend, with whom she had a history of domestic violence, had strangled D.R.  The Department placed D.R. in foster care for a second time in August 2017; mother regained custody of him about two years later, in July 2019, subject to the condition that her boyfriend could not have contact with D.R.

---

[2] Mother separately appealed the termination of her parental rights.  *See Cline v. City of Roanoke Dep't of Soc. Servs.*, No. 1963-23-3.

In February 2020, D.R. entered foster care for a third time because mother violated the terms of her custody arrangement with the Department. After mother tested positive for oxycodone and methamphetamine later that year, the Department petitioned the juvenile and domestic relations district court to terminate her and father's parental rights. The JDR court granted the Department's petitions, but the circuit court denied the petitions on appeal and returned D.R. to mother's custody on June 1, 2021.

After father was released from incarceration in late 2021, he briefly lived with mother and D.R. However, he and mother used methamphetamine during that time and, upon mother's positive drug test for methamphetamine and cocaine, the Department removed D.R. from mother's care on February 18, 2022. Father was reincarcerated on April 1, 2022.

The JDR court entered emergency and preliminary removal orders and adjudicated that D.R. had been, or was at risk of, being abused or neglected. The Department then filed a foster care plan with the primary goal of relative placement and a concurrent goal of adoption. In April 2022, the JDR court entered a dispositional order approving the plan.[3] The JDR court later entered orders approving the Department's permanent foster care goal of adoption and terminating the parents' parental rights.

Father appealed the JDR court's orders terminating his parental rights to the circuit court.[4] He was released from incarceration on August 18, 2023, about a month before the circuit court heard his appeal. At the circuit court hearing, the Department introduced evidence and testimony regarding its history with the family as recounted above. The Department's evidence reflected that father had "never shown . . . interest in being in [D.R.'s] life" or contacted the

---

[3] This Court upheld the dispositional order on appeal. *See Redman v. Roanoke City Dep't of Soc. Servs.*, No. 0098-23-3 (Va. Ct. App. May 14, 2024).

[4] Mother separately appealed the termination of her parental rights. *See Cline v. City of Roanoke Dep't of Soc. Servs.*, No. 1963-23-3.

Department while D.R. was in foster care. The Department's evidence also included a report, dated October 20, 2022, which stated that father "ha[d] not worked with the Department in order to receive custody or services" but favored returning D.R. to mother's custody. The Department explained that it did not provide father rehabilitative services following his most recent release from incarceration because it had been unable to contact or locate him despite its efforts.[5] The Department reported that D.R. was physically healthy and had received occupational therapy, educational services, and good grades in school since entering foster care.

Father testified that mother was "a very great mother," but he also admitted that he had done "nothing" for D.R. and was not "a great father." He asked the circuit court to return D.R. to mother's care. Asked where he had been residing since his release from incarceration, father stated that he had been "staying with a friend," but that he did not know the friend's address.

In closing, father argued that the Department's "case ha[d] been entirely against" mother and that the Department had not presented any evidence supporting the termination of his parental rights. After considering the arguments and evidence, the circuit court entered an order approving the permanent goal of adoption and terminating father's parental rights under Code § 16.1-283(B), (C)(1), and (C)(2). Father appeals.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and

___

[5] The Department had requested updated contact information from father's counsel, but his counsel also did not have accurate contact information.

- 4 -

will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Father asserts that the circuit court erred by terminating his parental rights under subsection (C)(2) because the Department did not prove that he was unwilling to remedy the conditions which led to D.R.'s placement in foster care. Father emphasizes that he did not cause D.R. to be placed in foster care on February 18, 2022.

Our precedents hold that subsection C terminations "hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271 (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562 (2003)). In sum, it does not matter whether father caused D.R. to be placed in foster care; rather, the proper inquiry here is the steps father took to remedy the situation. *See* Code § 16.1-283(C)(2) (authorizing termination of parental rights when a parent has been "unwilling or unable" to remedy conditions which "required continuation of the child's foster care placement").

Father maintains that the circuit court erred by terminating his parental rights under subsection (C)(2) because the Department failed to offer him rehabilitative services. It is true that "parental rights cannot be terminated '[i]n the absence of evidence indicating that "reasonable and appropriate efforts" were taken by social agencies to remedy the conditions leading to foster care.'" *Joyce*, 75 Va. App. at 701 (quoting *Weaver v. Roanoke Dep't of Hum. Res.*, 220 Va. 921, 928-29 (1980)). Whether the Department made such reasonable and appropriate efforts "can only be judged with reference to the circumstances of a particular case." *Id.* (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004)).

Acknowledging that the Department tried to contact him after his release from incarceration, father suggests that the Department should have also provided him services while he was incarcerated. Our precedents do not support father's contention. We have held that Code § 16.1-283(C)(2) does not require the Department to offer services to a parent during his incarceration. *Harrison*, 42 Va. App. at 163-64. Indeed, we have concluded that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." *Id.* While he was incarcerated, the Department had no avenue to offer father services to assist him in regaining custody of D.R. *Id.* at 164. And although father's incarceration is not sufficient, standing alone, to support the termination of his parental rights, "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination." *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 340 (1992). The record supports the circuit court's finding that the Department made reasonable and appropriate efforts to offer father rehabilitative services under the circumstances of this case.

Confusingly, father contends that "there existed a real and abiding bond between [D.R.] and [himself], and [he] desired to continue the care of [D.R.]." However, father has been historically incarcerated for a significant part of his own life and has had "little" interaction with D.R., who is now sixteen years old.[6] Father made no efforts to contact the Department or be involved in D.R.'s life while D.R. was in foster care. Instead, father consistently advocated for D.R. to be returned to mother's custody, supporting an inference that he had no intention of parenting D.R. Notably, at the hearing, father never stated he had a strong bond with D.R. and never asked the circuit court to return D.R. to his care. Father instead stated that he "had not did nothing," he "ha[s] not been there," and he has "not been a great father." Rather than informing the circuit court of his intentions on how he can better care for D.R., he requests that the circuit court return D.R. to *his mother*. During his testimony, father never asked the circuit court to return D.R. to his care, in fact, father displayed no intention of leaving his current living situation, which is "with a friend about an hour away."[7] Father's testimony that he lived with his friend, his history of incarceration, and his plea to return D.R. to *mother's* care permitted the circuit court to conclude that he was unable and unwilling to remedy the conditions which led to D.R.'s placement in foster care.

Notwithstanding father's lack of interest in obtaining custody of D.R., the Department attempted to work with him during his most recent incarceration and offer him services after his release. Father chose not to work with the Department, could not be found after his release, and

---

[6] Although the reports that the Department had access to did not indicate how long father has been incarcerated, the reports did reflect that father has an extensive criminal history dating back to 1994. Father was most recently sentenced in June 2022 for multiple charges of felony probation violation for two counts of felony credit card theft, felony credit card fraud, three counts of felony forgery, felony credit card larceny, and petit larceny. Further, mother recounted an instance where she "waited three years on him" while father was incarcerated, and once he was released from prison "for one week, he did okay" but "then he went back to his old life."

[7] Father could not recall the address of where he is living, just that it is "in the country."

could not provide his home address at the circuit court hearing. The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013). The circuit court was not plainly wrong in determining that the Department's efforts to provide father rehabilitative services were reasonable and appropriate under the circumstances.

The record reflects that D.R. is doing well in foster care. At the time of the circuit court hearing, D.R. had been in foster care for a total of nearly five and a half years. A child languishing in foster care is left with the prospect that he or she has but one shot at a positive and productive childhood, and "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Id.* at 322 (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Based on the record, the circuit court did not err in finding that it was in the best interests of D.R. to terminate father's parental rights under Code § 16.1-283(C)(2).[8]

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[8] "When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Given our conclusion that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), we do not address whether it properly relied on Code § 16.1-283(B) or (C)(1) when it terminated father's parental rights.